UNITED STATES DISTRICT COURT                        <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                    <u>**MEMORANDUM & ORDER**</u>
                                                    17-CR-615 (JMA)


                        -against-


HOWARD DAVIS,

                                Defendant.
-----------------------------------------------------------------------X

**APPEARANCES:**

Seth D. DuCharme
    Acting United States Attorney
Christopher C. Caffarone
Mark E. Misorek
Monica K. Castro
    Assistant United States Attorneys
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
        *Attorneys for the United States*

Christopher Cassar
13 East Carver Street
Huntington, NY 11743
        *Attorney for Defendant Howard Davis*

**AZRACK, United States District Judge:**

Defendant Howard Davis ("Defendant") has been charged in a third superseding indictment that consists of forty-eight counts. (ECF No. 106.) He is accused of various charges involving drug trafficking and related firearms offenses. (<u>Id.</u>)

Pending before the Court are various motions Defendant has filed in advance of trial. (ECF No. 78.) Defendant filed his motions in response to the first superseding indictment, dated June 8, 2018. (ECF No. 25.) Subsequently, two additional superseding indictments were returned.

(ECF Nos. 103, 106.)  Though the Court afforded Defendant the opportunity to move in response to the most recent superseding indictment, the third superseding indictment, dated October 15, 2020, he has not done so.  (See Electronic Order, 10/28/20.)

The Court divides its analysis between: (1) Defendant's motions for disclosure, and (2) Defendant's motions to suppress.  The Court rules as follows:

## I.    Defendant's Disclosure Motions:

### A.  Motion for a Bill of Particulars (Motion 1)[1]

Defendant seeks a bill of particulars because, he claims, "the allegations contained in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused and fail to permit Defendant to 'conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges.'"  (ECF No. 78-1 at 2 (quoting United States v. Bin Laden, 92 F. Supp. 2d 225 (S.D.N.Y. 2000)).)  His motion concerns five specific counts in the first superseding indictment:

- Count 1 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances);

- Count 2 (Use of Firearms In Connection with a Drug Trafficking Crime);

- Count 5 (Discharging a Firearm During a Crime of Violence: Assaults of John Doe #1 and John Doe #2);

- Count 6 (Assault with a Dangerous Weapon in Aid of Racketeering: Shooting of John Doe #3); and

- Count 8 (Assault with Dangerous Weapons in Aid of Racketeering: Shooting of John Doe #4).

---

[1]  Defendant labels his motions using Roman numerals.  However, certain Roman numerals are repeated while others are omitted.  Accordingly, the Court has re-numbered Defendant's applications based on the order in which they appear in his brief.

(Id.)  In particular, Defendant seeks the disclosure of certain information with respect to these counts, including: the names, addresses, and acts committed by Defendant's co-conspirators; descriptions, dates, times, and locations of the underlying acts or omissions giving rise to the charges; statements made by Defendant and his co-conspirators; information related to the drugs and firearms at issue; law enforcement reports; and a description of how certain assaults were for the purpose of maintaining and increasing his position in the Bloods.  (Id. at 4, 8-14.)

Since Defendant moved, two additional superseding indictments have been returned.  (ECF Nos. 103, 106.)  The third superseding indictment—the most recent—revised and split some of the counts on which Defendant focused his motion.  For example, among other changes, Count 1 of the third superseding indictment provides additional detail regarding the controlled substances at issue.  (ECF No. 106 at 4.)  In addition, new allegations relating to the John Does are advanced. (Id.)  Further, the Government's opposition to Defendant's motion details significant discovery it provided to Defendant pursuant to Rule 16, including several pieces of information Defendant sought in his original motion.  (ECF No. 83 at 10.)  The docket also reflects that since the Government filed its opposition, it has made several supplemental disclosures to Defendant pursuant to Rule 16.  (ECF Nos. 107, 108, 112, 114, 115.)

Defendant has not shown that he is entitled to a bill of particulars with respect to the first superseding indictment in light of the two subsequent superseding indictments and the discovery he received from the Government.  He has not explained why these developments are insufficient to provide him with the information he needs to "conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges."  (ECF No. 78-1 at 2.)  Accordingly, the Court finds that his motion is moot.

Even if the motion were not moot, it would be denied.  Under Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant can seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  In general, "if the information sought by the defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."  Id.  It is within the sound discretion of the district court whether to grant a bill of particulars.  Id.

The purpose of a bill of particulars "is not meant to enable a defendant to obtain a preview of the government's evidence before trial or to learn the legal theory upon which the government will proceed."  United States v. Rodriguez, No. 18-CR-444, 2019 WL 112621, at *6 (E.D.N.Y. Jan. 4, 2019) (citations and quotation marks omitted).  Because a bill of particulars is not intended to be a discovery device, the Court "cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories, lest the defendant tailor his testimony to explain away the government's case."  United States v. Batista, No. 06-CR-265, 2009 WL 910357, at *9 (E.D.N.Y. Mar. 31, 2009) (citation omitted).  Because a bill of particulars is only necessary when "the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he [or she] is accused," the applicable standard as to whether it should issue "is not whether the information sought would be helpful to the defense, but whether it is necessary."  Id.

Further, with respect to the information Defendant requests concerning the conspiracy, "[t]he government is not required to include the dates of the specific events that occurred in

4

furtherance of the conspiracy." <u>United States v. Carpenter</u>, No. 18-CR-362, 2018 WL 6933160, at *7 (E.D.N.Y. Dec. 28, 2018). Additionally, Defendant is "not entitled to the details of the government's conspiracy allegations in a bill of particulars . . . because '[t]he government is not required to prove . . . exactly when or how a conspiracy was formed or when a particular defendant joined the scheme.'" <u>Id.</u> (quoting <u>Bin Laden</u>, 92 F. Supp. 2d at 242). Defendant's specific requests in his motion for a bill of particulars make clear that he is attempting to gain a preview of the Government's evidence and legal theories. This is not the function of a bill of particulars and is squarely barred by the applicable caselaw, as explained above. Accordingly, if Defendant's motion had not been moot, it would be denied.

### B. Motion for Unredacted Affidavit in Support of the Search Warrants (Motion 2)

Defendant seeks an unredacted version of the affidavit filed in support of the search warrants Magistrate Judge Anne Y. Shields signed on November 7, 2017. (ECF No. 78-1 at 14.) Because the Government provided this document to Defendant with its opposition brief, (ECF No. 83 at 10), the Court denies the motion as moot.

### C. Motion for Statements or Confessions of Defendant (Motion 9)

Defendant seeks the disclosure of any statements or confessions he made to law enforcement while in custody. (ECF No. 78-1 at 65.) The Government contends that it is unaware of any such statements. (ECF No. 83 at 11.) Accordingly, Defendant's motion is denied as moot.

Additionally, Defendant requests the disclosure of statements he made "to individuals acting under the direction or in cooperation with" law enforcement. (ECF No. 78-1 at 65-66.) The Government has represented that it will provide Defendant with videos and transcripts that are responsive to this request. (ECF No. 83 at 11.) Consequently, this motion is likewise denied as moot.

### D.  Motion for Identification Evidence (Motion 10)

Defendant requests disclosure of information related to photo identification procedures used by law enforcement.  (ECF No. 78-1 at 67.)  In response, the Government contends that it has provided Defendant with this material.  (ECF No. 83 at 11.)  The Government notes, however, that Defendant is not entitled to his request for the "name(s) of the person(s), including counsel who were present" at the photo arrays, (ECF No. 78-1 at 67), because "Fed. R. Crim. P. 16 does not require the government to furnish the names and addresses of its witnesses in general."  United States v.  Bejasa, 904 F.2d 137, 139 (2d Cir. 1990).  The Court agrees that the Government does not yet need to disclose this information.  However, the Court will soon set a date for the disclosure of the Government's witness list and related information, which should be responsive to Defendant's request for the names of any witness and counsel who viewed the photo array.  Accordingly, Defendant's motion is denied in part as moot and denied in part as premature.

### E.  Motion for Voice Identification (Motion 11)

Defendant seeks disclosure of any pretrial voice or other identification procedures used by the Government. (ECF No. 78 at 74.)  The Government responds that it is unaware "of any such identifications."  (ECF No. 83 at 11.)  Accordingly, this motion is denied as moot.

### F.  Motion for Exculpatory and Impeachment Evidence (Motion 12)

Defendant makes a broad request for the Government to produce evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), and their progeny.  (ECF No. 78-1 at 71.)

With respect to Brady, the Court is satisfied with the Government's representation that it "understands and will continue to comply with its obligation to produce any exculpatory material as defined by Brady and its progeny."  (ECF No. 83 at 12.)  As to Giglio material, the Government

has agreed to produce the <u>Giglio</u> and 3500 material Defendant has requested two weeks before trial.  (<u>Id.</u>)  The Court is satisfied with this timeline because "there is no constitutional right to early disclosure of <u>Giglio</u> or § 3500 material."  <u>United States v. Minaya</u>, 2012 WL 1711569, at *4 (S.D.N.Y. May 14, 2012).  Further, there is no indication Defendant will not have "sufficient time after receipt of <u>Giglio</u> material to use it effectively at trial," which would otherwise justify early disclosure.  <u>United States v. Frank</u>, 11 F. Supp. 2d 322, 325 (S.D.N.Y. 1998).

As to the specific evidence for which Defendant seeks disclosure, the Government challenges Defendant's request for the complete personnel files of law enforcement witnesses. (ECF No. 83 at 12.)  The Court agrees with the Government that Defendant is only entitled to such material to the extent they contain material for impeachment of an officer's testimony.  <u>See</u> <u>United States v. Hargrett</u>, No. 96-CR-17, 1996 WL 551090, at *10 (N.D.N.Y. Sept. 25, 1996) ("[T]he government has expressed reservations at the prospect of disclosing law enforcement personnel files as <u>Giglio</u> material.  This court emphasizes that such dossiers, sensitive though they may be, are nonetheless discoverable <u>if</u> they contain information tending to impeach the agent's or officer's testimony." (emphasis in original)).  Defendant has identified no authority holding to the contrary. Accordingly, his motion is denied.

### G.  Motion for Early Disclosure of Jencks Act Material (Motion 13)

Defendant seeks early disclosure of material pursuant to the Jencks Act, 18 U.S.C. § 3500, 45 days before trial.  (ECF No. 78-1 at 74.)  The Government has committed to providing this requested material 14 days before trial.  (ECF No. 83 at 13.)  As explained earlier, "there is no constitutional right to early disclosure of <u>Giglio</u> or § 3500 material."  <u>Minaya</u>, 2012 WL 1711569, at *4.  Indeed, the statute provides: "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the

7

defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Defendant has not pointed to any authority that entitles him to the requested information 45 days before trial. Accordingly, his motion is denied, and the Court is satisfied with the Government's representation that he will receive this material 14 days before trial.

### H.  Motion for Rule 404(b) Evidence (Motion 14)

Defendant seeks an order that requires the Government to "disclose to the defendant, no later than four weeks prior to trial, all evidence that the government intends to offer against defendant at trial pursuant to Rule 404(b) of the Federal Rules of Evidence." (ECF No. 78-1 at 75.) The Government has agreed to Defendant's request. (ECF No. 83 at 13.) Therefore, this motion is denied as moot.

### I.  Motion for Cooperation Agreements (Motion 15)

Defendant seeks disclosure of any agreements made between the Government and any prosecution witness. (ECF No. 78-1 at 77.) The Court expects that the Government will comply with its disclosure obligations with respect to this information and denies this motion as premature.

### J.  Motion for Discovery (Motion 16)

Defendant moves the Court to order the Government to disclose various pieces of evidence pursuant to Federal Rules of Criminal Procedure 6, 7, 12, and 16. (ECF No. 78-1 at 79.) In support of his request, Defendant submits an exhaustive list of 40 categories of items, nearly each of which contains a list of various subitems, to which he argues he is entitled. In response, the Government has committed to "comply[ing] with its obligations under Rule 16 and will produce any responsive materials if and when they become available to the government." (ECF No. 83 at 12.) Defendant

8

has not raised any objection to the Government's representation, and the Court is unaware of any failure of the Government to comply.  Accordingly, this motion is denied as moot.

### K.  Motion for Co-conspirator Statements (Motion 17)

Defendant moves for disclosure of any alleged co-conspirator statements and seeks to suppress any such statements that fail to satisfy Federal Rule of Evidence 801(d)(2)(e).  (ECF No. 78-1 at 91.)  However, "Federal Rule of Criminal Procedure 16 does not require the government to disclose statements by alleged co-conspirators that the government will seek to introduce at trial pursuant to Fed. R. Evid. 801(d)(2)(E)."  United States v. Rodriguez, No. 19-CR-779, 2020 WL 5819503, at *11 (S.D.N.Y. Sept. 30, 2020).  As a result, "[c]ourts in this Circuit routinely deny requests for early disclosure of 801(d)(2)(E) information as inconsistent with the Jencks Act."  Id.

The Court expects the Government to comply with its disclosure obligations with respect to such statements.  Defendant has failed to demonstrate any basis to justify early disclosure.  To the extent Defendant seeks to suppress any of these statements, such a request is premature and lacks any specificity as to which specific statements he claims are barred by Federal Rule of Evidence 801.  Accordingly, this motion is denied.

## II.  Defendant's Suppression Motions:

### A.  Motion to Controvert the Search Warrant (Motion 3) and Request for a Franks Hearing (Motion 4)

Defendant challenges two search warrants authorizing the searches of the residence of his sister and a Winnebago parked nearby.  (ECF No. 78-1 at 42, 46.)  In particular, he claims that the affidavit submitted in support of the warrant failed to demonstrate probable cause because it did not link the residence or vehicle to the commission of any crime.  (Id.)  The Court disagrees.

The Fourth Amendment bars "unreasonable searches and seizures," and the Warrants Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The probable cause determination "is not overly strict." <u>United States v. Martin</u>, 426 F.3d 68, 74 (2d Cir. 2005).  In determining whether probable cause exists, the magistrate judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>United States v. Mouzon</u>, No. 16-CR-284, 2016 WL 7188150, at *2 (S.D.N.Y. Dec. 2, 2016) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). "The quanta of proof necessary to establish probable cause is 'only the probability, and not a <u>prima facie</u> showing, of criminal activity.'" <u>United States v. Wagner</u>, 989 F.2d 69, 72 (2d Cir. 1993) (quoting <u>Gates</u>, 462 U.S. at 235).  The probable cause determination should be approached in a "practical way" using a "flexible, common-sense standard" that recognizes "the training and experience of law enforcement agents in assessing human behavior and evidence." <u>United States v. Bryant</u>, No. 19-CR-80, 2020 WL 5659646, at *2 (S.D.N.Y. Sept. 23, 2020) (citing <u>Gates</u>, 462 at 231-32).  Once the magistrate judge has issued a warrant, the reviewing court must give substantial deference to the magistrate's probable cause determination.  <u>Mouzon</u>, 2016 WL 7188150, at *3. As the Supreme Court has long held, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of <u>de novo</u> review." <u>Gates</u>, 462 U.S. at 236.

The affidavit submitted in support of the warrants was executed by a Task Force Officer who worked with the United States Department of Homeland Security, Homeland Security Investigation.  (ECF No. 84.)  It described, in detail, several transactions in which a confidential informant ("CI") purchased narcotics from Defendant in both the residence and the vehicle that were the subjects of the search warrants.  (<u>Id.</u>)  Many of these purchases were recorded on audio or video.  (<u>Id.</u>)  The affidavit therefore contained ample support for Judge Shields's finding that

there was a "fair probability" that contraband or evidence of a crime would be found in the residence and vehicle that were the subjects of the search warrants.  Contrary to Defendant's assertion, the affidavit clearly linked both the residence and the vehicle to the commission of several crimes.  Accordingly, Defendant's motion is denied.

Additionally, because the Court finds that the search warrants were legally sufficient, Defendant is not entitled to a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  (ECF No. 78-1 at 46.)  Defendant claims that the purported failure of the search warrants to link the residence or vehicle to the commission of any crimes constitutes a material omission and therefore entitles him to a <u>Franks</u> hearing.  (<u>Id.</u>)  "To be entitled to a <u>Franks</u> hearing, a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding."  <u>United States v. Guillen</u>, No. 17-CR-512, 2018 WL 5831318, at *5 (S.D.N.Y. Nov. 7, 2018) (quoting <u>United States v. Salameh</u>, 152 F.3d 88, 113 (2d Cir. 1998)).  Here, as explained earlier, the search warrants were supported by ample probable cause.  Defendant has not even come close to alleging that the affidavit contained "inaccuracies or omissions" when it clearly linked the residence and vehicle to the commission of crimes.  Accordingly, his motion for a <u>Franks</u> hearing is denied.

**B. Motion to Suppress the Evidence Recovered Based on the Allegedly Defective Search Warrant (Motion 5)**

Defendant argues that the evidence recovered during the execution of the search warrants at the residence and vehicle must be suppressed because the warrants were "far too broad and permitted the government to conduct an unconstitutional general exploratory rummage of the defendant's premises."  (ECF No. 78-1 at 52.)  Specifically, he claims that the warrants failed to articulate any time constraints, lacked sufficient particularity as to the items to be seized, and were

11

supported by stale information.  (Id. at 52-57.)  The Court disagrees with each of Defendant's contentions and denies his motion to suppress for the reasons set forth below.

      1.  Time Constraints

Defendant argues that the warrants were overbroad and "placed no time parameters" on the search which, conceivably, could have led to "[t]hirty-year-old documents being seized."  (Id. at 53.)  While the failure of a warrant "to include a temporal limitation on the things to be seized may, in certain circumstances, render a warrant insufficiently particular, there is no consensus in this Circuit 'as to when one is required.'"  United States v. Jacobson, 12-CR-432, 2014 WL 962227, at *8 (E.D.N.Y. Mar. 13, 2014) (quoting United States v. Cohan, 628 F. Supp. 2d 355, 366 (E.D.N.Y. 2009); see also United States v. Triumph Capital Grp., Inc., 211 F.R.D. 31, 58 (D. Conn. 2002) ("A temporal limitation in a warrant is not an absolute necessity, but is only one indicia of particularity.").

Here, the indictment charged Defendant with multiple crimes as part of a wide-ranging drug trafficking conspiracy alleged to have taken place between January 2014 and November 2017. (ECF No. 1.)  The affidavit submitted in support of the search warrants cited numerous instances during this time period in which Defendant was observed selling narcotics and displaying firearms to a CI.  (ECF No. 84.)  Considering the complexity of the charges and the allegations that the conspiracy spanned multiple incidents that took place over several years, the Court finds that the lack of a temporal limitation does not render the warrants constitutionally defective.  See Jacobson, 4 F. Supp. 3d at 526 (Given that "the crimes under investigation were complex and concerned a long period of time, not simply one or two dates of criminal activity . . . in this case, the absence of a time frame did not render the otherwise particularized warrants unconstitutionally general.") And while "an express time frame of 'within the last three years' or something of a similar nature

12

may have been ideal, the lack of a time frame in itself does not transform what is otherwise a relatively particularized document into an unconstitutional general warrant."  United States v. Hernandez, No. 09-CR-625, 2010 WL 26544, at *11 (S.D.N.Y. Jan. 6, 2010).  As explained below, given the reasonably particular descriptions of the items to be seized and the context of this complex narcotics case, the warrant was constitutional despite the lack of temporal parameters.

>        2.   Particularity

Defendant next argues that the search warrants failed to sufficiently particularize the items to be seized.  (ECF No. 78-1 at 54.)  In particular, he contends that the warrants "did not contain specific descriptions of the property to be seized" and "referred to general record[s] and items." (Id.)  Defendant is wrong because the warrants contained narrow descriptions that specifically connected the items to be seized to the criminal offenses at issue.

The Fourth Amendment provides that warrants "shall issue, . . . particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The Second Circuit has held that to meet the particularity requirement of the Fourth Amendment, a warrant must: (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes."  United States v. Galpin, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal citations and quotation marks omitted).  Here, the challenged search warrants clearly satisfy the Fourth Amendment's particularity requirement and meet all three of these factors.

First, each warrant identifies the specific offense for which there is probable cause.  In particular, the warrants state that all items to be seized from the residence and vehicle "constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 924(c)."  (ECF No. 84 at 23, 28.)

13

Second, the warrants adequately describe the places to be searched.  Each contains at least one photo of the residence or the vehicle, lists the address, and provides a detailed description.  For example, the vehicle is described as "a white Winnebago, with blue trim around the entire lower portion of the vehicle" with no license plates, while the residence is referred to as "a single family, center hall colonial home, with an attached garage," along with other identifying information.  (Id. at 21, 26.)  Finally, the warrants delineate the specific items to be seized and relate them to the drug and firearms crimes at issue.  Reproduced below is the entirety of the items as they are listed in the warrants:

> 1. drugs, drug paraphernalia, scales, drug residue, dilutants and materials related to distributing and/or manufacturing drugs;
>
> 2. books and records, showing cash transactions, prices and quantities of drugs bought and sold;
>
> 3. books and records showing the names, addresses, and telephone numbers of purchasers and suppliers of drugs, as well as the identities of confederates in drug trafficking, including indicia of membership;
>
> 4. pagers, electronic organizers, cellular telephones and related bills and receipts;
>
> 5. firearms, including firearm ammunition, shell casings, discharged rounds and holsters;
>
> 6. motor vehicle records, telephone bills, property records showing ownership and assets purchased with drug proceeds;
>
> 7. banking and financial records, to include wire transfer receipts, bank deposit and withdrawal slips and any other documents evidencing financial transactions conducted with proceeds;
>
> 8. currency used to purchase drugs, or reflecting proceeds of sales of drugs; and
>
> 9. photographs, photographic negatives (developed and undeveloped) and video tapes or disks, which show the identities of conspirators, contraband, and evidence of drug trafficking[.]

(Id.)

Defendant appears to take issue with the third part of the particularity analysis under Galpin.  He challenges the level of detail with which the items to be seized are described.  In particular, Defendant characterizes the items to be seized as "general record[s] and items."  (ECF No. 78-1 at 54-55.)  He fears that "[w]ith such broad, all-encompassing language, the warrant allowed for the seizure of such innocuous items as video cassette recorders, still cameras, and video games."  (Id.)

Ultimately, Defendant's argument fails because the items in the warrant are described in narrower terms than he describes and specifically link each item to be seized to the crimes at issue.  Furthermore, even if the items had been more broadly described, the warrants could still pass constitutional muster.  Indeed, "courts in this Circuit have routinely upheld warrants that define the items to be seized by 'reference to particular offenses and the use of an illustrative list.'"  United States v. Messalas, No. 17-CR-339, 2020 WL 4003604, at *5 (E.D.N.Y. July 14, 2020) (quoting Jacobson, 4 Supp. 3d at 524).  "Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category."  United States v. Riley, 906 F.2d 841, 845 (2d Cir. 1990) (permitting warrant that "authorized the agents to search for records of the distribution of cocaine and records of the investment of drug proceeds and illustrated permissible types of the latter records by listing bank records, business records, and safety deposit records, in other words, records that could reasonably be expected to indicate what the defendant had done with drug proceeds or the locations where he maintained such proceeds or items obtained by use of such proceeds").

15

Because the categories of items to be seized were adequately described in terms of their connection to the crimes at issue, the Court finds that the warrants do not violate the Fourth Amendment.  The list of items in the search warrants are consistent with those repeatedly upheld by courts in this circuit, as described above.  Further, to the extent Defendant fears that "innocuous" evidence might have been seized, "the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category," Riley, 906 F.2d at 845, and it appears that they did so here.  Notably, Defendant identifies no specific pieces of seemingly "innocuous" evidence that he claims were improperly seized pursuant to the warrants, and he frames his argument only in hypothetical terms.  In light of the foregoing, the Court finds that the warrants are sufficiently particular and pass constitutional muster.

      3.   Staleness

Finally, Defendant argues that the warrants are stale because of the "long delay . . . between the triggering events and the issuance of the warrant."  (ECF No. 78-1 at 56-57.)  The Court disagrees because the affidavit submitted in support of the search warrants provides no basis to find any "long delay."

The affidavit details narcotics purchases made by the CI in October and November 2017. The most recent purchase before the search warrant was executed is said to have taken place on November 4, 2017.  (ECF No. 84 at 7.)  Judge Shields signed the warrants only three days later on November 7, 2017.   Defendant does not even attempt to explain how three days constitutes staleness, particularly when, "[i]n investigations of ongoing narcotics operations, the Second Circuit has held that 'intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale.'"  Bryant, No. 19-CR-80, 2020 WL 5659646, at *5 (quoting United States v. Diaz, 176 F.3d 52, 109 (2d Cir. 1999)).

16

As the Second Circuit has found, there is "no bright-line rule for staleness." Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007). The "principal factors" to assess whether the supporting facts in an affidavit have become stale are: "the age of those facts and the nature of the conduct alleged to have violated the law." Mouzon, 2016 WL 7188150, at *3 (quoting United States v. Gallo, 863 F.2d 185, 192 (2d Cir. 1988)). The evidence supporting the warrant must be "sufficiently close in time to the issuance of the warrant that probable cause can be said to exist as of the time of the search." United States v. Davis, No. 17-CR-610, 2018 WL 4373998, at *8 (S.D.N.Y. Sept. 13, 2018) (quoting United States v. Raymonda, 780 F.3d 105, 114 (2d Cir. 2015)).

Particularly in cases involving narcotics operations, as here, "[f]acts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." Bryant, No. 19-CR-80-01, 2020 WL 5659646, at *5 (S.D.N.Y. Sept. 23, 2020) (quoting United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993)). Moreover, "[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." Wagner, 989 F.2d at 75.

Defendant has not even attempted to explain how the search warrants are stale. And given that the purportedly "long delay" was only three days, Defendant would not be able to do so even if he tried. In light of the foregoing, the Court concludes that Defendant's staleness argument is meritless. Based on the Court's denial of Defendant's arguments with respect to the warrants, the Court need not reach the Government's other arguments as to application of the good faith exception and "tainting" of the warrant. (ECF No. 83 at 18-19.)

17

### C. Motion to Suppress Evidence from the Pen Register (Motion 6)

Defendant next moves to suppress any evidence recovered pursuant to a July 12, 2017 order by then-Magistrate Judge Gary R. Brown that authorized the use of a pen register and tap and trace device on Defendant's Sprint telephone.  (ECF No. 78-1 at 58.)  In particular, Defendant argues that the Government's application "failed to comply with the statutory requirements of 18 U.S.C. §§ 2703(c)(1)(B), 2703(c)(2) and 2703(d)" because it contained a "bare-bones certification" concerning the relevance to an ongoing criminal investigation.  (Id. at 60-61.)  Defendant's argument fails because he cites the incorrect standard governing the use of pen registers and tap and trace devices, and the Government has satisfied the applicable standard.

Pursuant to the correct standard, 18 U.S.C. § 3122, the contents of an application for an order to authorize a pen register or a tap and trace device must include:

> (1) the identity of the attorney for the Government or the State law enforcement or investigative officer making the application and the identity of the law enforcement agency conducting the investigation; and
>
> (2) a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.

18 U.S.C. § 3122(2)(b).  The application at issue here satisfies this standard.  First, it identifies the name of the Assistant United States Attorney making the application and indicates that the Department of Homeland Security, Homeland Security Investigations is the law enforcement agency conducting the ongoing criminal investigation.  (ECF No. 78-7 at 3.)  Second, the application contains the requisite certification regarding the information's relevance to the ongoing criminal investigation.  (Id.)  This requirement regarding the certification is "not intended to require independent judicial review of relevance; rather, the reviewing court need only verify the completeness of the certification."  In re U.S., 10 F.3d 931, 935 (2d Cir. 1993).  While Defendant

may characterize the certification as "bare-bones," it complies with the requirements of the statute, and it is complete.  Accordingly, the Court denies Defendant's motion.

### D.  Motion to Suppress Evidence from Defendant's Arrest (Motions 7 and 8)

Defendant next claims that his arrest was illegal because the police acted without a search or arrest warrant.  (ECF No. 78-1 at 61.)  Therefore, he argues, any evidence—including physical evidence, statements, and identification evidence—from his purportedly unlawful arrest should be suppressed.  (Id. at 63.)  In connection with his claim, he requests a hearing pursuant to Dunaway v. New York, 422 U.S. 463 (1980).  (Id.)  Because Defendant's arrest was legal and Defendant wrongly asserts that the police acted without a warrant, the Court denies his motion.

On November 7, 2017, a grand jury returned an indictment against Defendant.  (ECF No. 1.)  On the same day, Judge Shields signed a warrant for Defendant's arrest, (ECF No. 2), as well as the search warrants described earlier.  Defendant was arrested the next day pursuant to the arrest warrant.  (ECF Nos. 3; 83 at 22.)

Under the Fourth Amendment, "[p]robable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested.'"  United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008) (quoting United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990)).  Defendant's argument relies only on caselaw regarding warrantless arrests.  That is not the situation here, where Defendant's arrest was made pursuant to a valid outstanding warrant.

Given that the Court finds that Defendant's arrest was supported by probable cause and a valid warrant, the "search-incident-to-arrest doctrine" provides an exception to the general requirement "that an officer must obtain a judicial warrant supported by probable cause before

conducting a search." United States v. Diaz, 854 F.3d 197, 205 (2d Cir. 2017).  As the Supreme

Court has recognized, the purpose of this doctrine is to "protect[] arresting officers and safeguard[]

any evidence of the offense of arrest that an arrestee might conceal or destroy."  Arizona v. Gant,

556 U.S. 332, 339 (2009).  In addition, "[i]t makes no difference whether the search occurs before

or after the arrest, so long as it is substantially contemporaneous with the arrest and is confined to

the immediate vicinity of the arrest."  Diaz, 854 F.3d at 205 (citation and quotation marks omitted).

Defendant provides the Court with no basis to find that the search incident to Defendant's arrest

pursuant to the arrest warrant was unconstitutional.  Accordingly, his motion to suppress the

evidence from his arrest is denied.  In addition, because there is no indication that Defendant was

arrested without probable cause, his request for a hearing for further inquiry is also denied.

### E.  Motion to Suppress Identification Evidence (Motion 10)

Defendant appears to raise hypothetical arguments that challenge the Government's pre-

trial identification procedures.  He states:

> In this case, if there were several police arranged pre-trial identification procedures
> of the defendant which were impermissibly suggestive and unreliable pretrial
> identification and is in violation of the defendant's right to due process if introduced
> into a criminal proceeding.  If there are police arranged photographic identifications
> of the defendant by several witnesses, then the viewing of this photographic
> identifications of the defendant was in a manner in which they were displayed to
> the witness was unnecessarily suggestive and conducive to a substantial likelihood
> of irreparable misidentification.

(ECF No. 78-1 at 68 (emphasis added).)  In its opposition, the Government represents that it "has

produced the only photo array involving an identification of the defendant of which it is aware,"

(ECF No. 83 at 11), and attaches a copy of the photo array, (ECF No. 83-4).  Defendant did not

respond, and his mere suggestion of the possibility of impropriety in his moving brief cannot

support the relief he seeks.  He fails to allege any irregularity in the identification procedures used

in this case and offers no facts to support his claim that there may have been an impermissible

suggestion.  A defendant "'may not baldly request' a hearing into the admissibility of pretrial identification evidence—commonly known as a <u>Wade</u> hearing." <u>United States v. Williams</u>, No. 13-CR-580, 2014 WL 144920, at *1 (S.D.N.Y. Jan. 15, 2014) (quoting <u>United States v. Berganza</u>, No. 03-CR-987, 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005)).  Instead, "[t]o be entitled to a hearing, a defendant must instead allege facts supporting his contention that the identification procedures used were impermissibly suggestive." <u>Id.</u>  Further, "[a] threshold showing of suggestiveness is necessary in order to trigger a <u>Wade</u> hearing." <u>Id.</u>  Here, Defendant has not even attempted to show that he is entitled to a <u>Wade</u> hearing, and he has alleged no facts to support his hypothetical contention that the identification procedures used were impermissibly suggestive.  Accordingly, his motion is denied.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court **DENIES** Defendant's motions.

**SO ORDERED.**

Dated:  March 3, 2021
          Central Islip, New York

                                    /s/ (JMA)
                                    JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE